IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| OSCAR LEE SYKES, JR., | ) | Civil Action No.: 4:04-664-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| HORRY COUNTY DETENTION CENTER, | ) | |
| J. RUEBEN LONG AND THOMAS M. FOX, | ) | |
| DIRECTOR, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff, Oscar Lee Sykes, Jr., ("Plaintiff/ Sykes") is an inmate in the custody of the South Carolina Department of Corrections (SCDC) currently housed at J. Reuben Long Detention Center ("JRLDC"). Plaintiff, appearing pro se, filed his complaint on March 31, 2004, alleging violations of his constitutional rights. Plaintiff filed a motion for summary judgment on February 1, 2005. Defendants filed a response to this motion on May 13, 2005. Defendants filed a motion for summary judgment along with a supporting memorandum on May 19, 2005. Because plaintiff is proceeding pro se, he was advised on or about May 19, 2005, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in the dismissal of his complaint.  The plaintiff filed a response on June 14, 2005. (Document #40).  On July 15, 2005, defendants filed a response to plaintiff's memorandum in opposition to defendants' motion for summary judgment. (Document #44).

# I.  DISCUSSION

## A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges that his constitutional rights were violated asserting a claim for conditions of confinement, medical indifference, negligence, and violation of Health Code/ safety violations. Specifically, plaintiff alleges that he was shackled at his feet and hands during his one hour of "free recreation" time which prevented him from being able to break his fall when he slipped in a puddle of water that had leaked from the shower area. As a result, plaintiff alleges that he sustained injuries requiring him to be sent to the hospital, and that there are health codes/ safety violations at the JRLDC. Plaintiff requests that the court order JRLDC to clean up the hazard conditions that violate the health code, order that he have proper time out from exercise to help heal his back, and monetary damages in the amount of $500,000.00.

As stated, both plaintiff and defendants have filed motions for summary judgment.

## B.  STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by <u>pro se</u> litigants, to allow them to fully develop potentially meritorious cases.  See <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  <u>Weller v. Department of Social Services</u>, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

2

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges that he is entitled to summary judgment based on the living conditions existing at the JRLDC which he alleges amount to cruel and unusual punishment. Specifically, plaintiff alleges that sewage water is allowed to leak onto the floor and that he was not allowed sufficient recreational time without the encumbrance of shackles. Further, plaintiff alleges that the officials at the Horry County Detention Center, specifically, defendant Fox, were deliberately indifferent to the conditions even though they had personal knowledge of the constitutional

violations. Further, plaintiff alleges that the defendants were deliberately indifferent to his medical needs.

Defendants responded to the motion for summary arguing that plaintiff's motion for summary judgment should be denied in that it fails to meet the requirements of Rule 56 of the Federal Rules of Civil Procedure and filed their own motion for summary judgment.

## D. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants filed a motion for summary judgment arguing that plaintiff has failed to make a showing that the conditions of confinement which he complains of were objectively sufficiently serious. Defendants argue that plaintiff's allegations that there was water on the floor and that he was not allowed sufficient exercise time without the burden of shackles do not rise to the level of being sufficiently serious. Further, defendants argue that plaintiff has failed to make a showing that defendant Fox had a sufficiently culpable state of mind as to any alleged violation complained of by plaintiff to meet the test set forth by the Court in Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.). Defendants state that it is admitted that officials, including defendant Fox, were aware that inmates from time to time would throw water and other materials on the floors in the detention center, but the issue was addressed by the fact that inmate workers were assigned areas in which they were responsible for cleaning up any such spills or other intentional acts serving to place water and materials on the floor. Defendants assert that when a leak or spill occurs, the area is cleaned by these inmate workers who assigned to that particular area. Defendants assert that the specific assignment of inmate workers to assure that spills of water and other potentially dangerous material do not remain on floors for an extended period of time is a reasonable measure to guarantee the safety of

4

the inmates. Defendants submitted the affidavit of Thomas Fox, (attached to their response to

plaintiff's motion for summary judgment) who attests that there was no conscious effort on his part

to disregard the safety of any inmate and specifically not the plaintiff with regard to any spills or the

living conditions existing at the facility.

### E.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due

process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause

of the Eighth Amendment.  Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987).  The rationale for this

distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has
> complied with the constitutional guarantees traditionally associated
> with criminal prosecutions . . . the State does not acquire the power
> to punish with which the Eighth Amendment is concerned until
> after it has secured a formal adjudication of guilt in accordance with
> the due process of law.  Where the State seeks to impose
> punishment without such an adjudication, the pertinent
> constitutional guarantee is the Due Process Clause of the
> Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be

punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520

(1979).  Using the standard set out in that case, a condition must be evaluated on whether or not

it was implemented to "punish" the detainee before he was convicted of any crime.  Balanced

against that concern, however, is the legitimate security concerns of housing a number of persons

prior to their trials.  If a restriction is imposed for a legitimate, non-punitive purpose, is not

excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it

will be upheld.  Bell,  441 U.S. at 538.

## F .  CONDITIONS OF CONFINEMENT

As previously stated, plaintiff alleges in his complaint that the conditions of confinement at the JRLDC amount to a level of cruel and unusual punishment. Specifically, plaintiff alleges that there was water on the floor in violation of health codes which caused him to sustain a fall and that he was not allowed sufficient exercise time without the encumbrance of shackles.

In their motion for summary judgment, defendants assert that plaintiff has failed to make a showing that the conditions of confinement which he complains of were objectively sufficiently serious. Further, defendants argue that plaintiff has failed to make a showing that defendant Fox had a sufficiently culpable state of mind that would satisfy the subjective prong of the Strickler test.

The plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381. The undersigned concludes that plaintiff has failed to produce any evidence of serious or significant physical or emotional injury resulting from his allegations. Plaintiff was taken to Conway Hospital by EMS and seen by Dr. Jeanjaquet. X-rays were taken which the doctor found to be negative and, thereby discharged plaintiff that same day with Motrin for discomfort. Subsequently, plaintiff requested either a wheelchair, crutches, or a neck brace and filed grievances when he was denied because there was no prescription for such. Furthermore, plaintiff has failed to show that defendant Fox acted against him with a sufficiently culpable state of mind. Strickler, supra.

Plaintiff argues in his response that he was being punished while a pretrial detainee by

6

being denied exercise except for one hour every forty-eight (48) hours, that he has been in maximum security residential unit for 20 months even after serving disciplinary time for which he was originally sent there, and that he was not returned to the hospital after he complained of pain as prescribed by the ER physician at Conway Hospital.

As to recreation, defendants responded that the overcrowding and personnel shortages at the JRLDC have made providing adequate outside recreation time for inmates difficult. Defendants attached the affidavit of Joey Anderson, the Deputy Director at the JRLDC, who attests that due to personnel shortages coupled with overcrowding at the facility have made providing substantial recreation time to inmates difficult. Anderson attests that JRLDC currently has officers working overtime with the Recreation Officer to provide as much recreation as possible for all inmates. Anderson attests that inmates are currently rotated to outside recreation.

Plaintiff alleges that he has been housed in the maximum security disciplinary unit for months even though he has served his disciplinary time. As to plaintiff being held in maximum security, Anderson attests that plaintiff was assigned to maximum security on November 13, 2003. On December 12, 2003, plaintiff was charged with assaulting another inmate in the maximum security unit causing injuries to the inmates face. On December 29, 2003, plaintiff alleged to have threatened Officer Jarvis Wilson by stating that he would kill him and his family upon his release from jail. On March 3, 2004, plaintiff was returned to the maximum security unit after meeting with his attorney at which time he refused to return to his cell and then slipped a bellychain down from around his waist and started using it as a weapon by slinging it at the officers. Anderson attests that his classification has been reviewed on numerous occasions regarding moving him to another unit, but his repeated violations have made this move impossible. (Anderson affidavit, attached to document #44). Defendants assert that due to

plaintiff's violent tendencies, and despite that Institution Classification has reviewed his status on numerous occasions, his repeated violations have made any move out of the maximum security unit impossible.

It is concluded that plaintiff's claim of cruel and unusual punishment with regard to recreation should be denied. Based on the defendants' response and affidavit of Joey Anderson, there has been a problem at JRLDC due to overcrowding and personnel shortages which have caused security concerns, the inmates are rotated for outside recreation, and plaintiff has not been singled out to suggest punishment.[1]

As to plaintiff's allegations that he has been wrongfully detained in maximum security even though he served his disciplinary time, the undersigned concludes that his classification has been reviewed but, due to his repeated violations as set out in the affidavit of Joey Anderson and not disputed by plaintiff, plaintiff's own violations or infractions have caused him to remain in the maximum security unit. Therefore, plaintiff has not been placed there as punishment.

Additionally, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. Plaintiff, like any prisoner, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra. As previous discussed, the Supreme Court noted that the administration of state prisons is a complex task, with numerous administrative goals, including the maintenance of order and discipline within the prison, the prevention of escapes and, to the extent possible, the rehabilitation of the inmates. These complex

---

[1] It is noted that plaintiff is no longer an inmate at JRLDC but has been transferred to Kirkland. (Document #45).

responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some prison practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

This Court is required to construe pro se complaints and petitions liberally. Such pro se complaints and petitions are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 9 (1980). A federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case. See Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a pro se complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. Fine v. City of New York, 529 F.2d 70, 74 (2d Cir. 1975). However, even under this less stringent standard, the Complaint in the captioned case is subject to summary dismissal because plaintiff has failed to set forth a claim for which relief can be granted. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Dep't of Social Svcs., 901 F.2d 387 (4th Cir. 1990).

Based on the above, the undersigned finds that plaintiff's motion for summary judgment on this issue should be denied and defendants' motion for summary judgment granted as to the issue of conditions of confinement.

### G.  MEDICAL INDIFFERENCE

Plaintiff argues that the defendants were deliberately indifferent to the personal injury he sustained as a result of his slip and fall on January 11, 2004, and the pain that he suffered as a result. Specifically, plaintiff contends that he was not returned to the Emergency Room when he complained of his pain.

In their motion for summary judgment, defendants argue that plaintiff has failed to make a showing of medical indifference. Defendants argue that plaintiff received medical treatment after his fall and has not made any direct allegations against defendant Fox with regard to this claim. Defendants argue that the allegations are made against Debra Hipp, L.P.N., who is not a named defendant. Defendants further assert that plaintiff has made no allegation that the failure to return him to the Emergency Room at Conway Hospital caused him any harm. Defendants assert that following his return to JRLDC, plaintiff filed a grievance the next day on January 12, 2004, in which he stated that he was experiencing pain in his neck and lower back. (Grievance attached as exhibit C). In response to the grievance, defendants state that plaintiff was seen by Debra Hipp, L.P.N. at the medical facility at JRLDC and was continued on Motrin for pain but his condition had not changed from his discharge at Conway Hospital. Thus, defendants contend that Mrs. Hipp deemed it unnecessary for him to return to the hospital. Defendants attached a copy of the medical record of the January 15, 2004, examination at JRLDC to their memorandum as Exhibit D. Defendants assert that they assured plaintiff received excellent medical care and was fully checked out and released from the Conway Hospital with instructions for Motrin for pain. Therefore, defendants argue that plaintiff's deliberate indifference has no merit.

The undersigned finds that the plaintiff fails to show that defendants were deliberately

indifferent to his medical needs.  In the case of <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the

Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the

unnecessary and wanton infliction of pain," <u>Id.</u>, quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-73

(1976).  The court stated:

> An inmate must rely on prison authorities to treat his medical
> needs; if the authorities fail to do so, those needs will not be met.
> . . . We therefore conclude that deliberate indifference to serious
> medical needs of a prisoner constitutes the "unnecessary and
> wanton infliction of pain," <u>Gregg v. Georgia</u>, supra, at 173, (joint
> opinion), proscribed by the Eighth Amendment.  This is true
> whether the indifference is manifested by prison doctors in their
> response to the prisoner's needs or by prison guards in
> intentionally denying or delaying access to medical care or
> intentionally interfering with the treatment once prescribed.
> Regardless of how evidenced, deliberate indifference to a prisoner's
> serious illness or injury states a cause of action under § 1983.

<u>Estelle</u>, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the

court was careful to note, however, that "an inadvertent failure to provide adequate medical care"

does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent
> in diagnosing or treating a medical condition does
> not state a valid claim of medical mistreatment
> under the Eighth Amendment.  Medical malpractice
> does not become a constitutional violation merely
> because the victim is a prisoner.  In order to state a
> cognizable claim, a prisoner must allege acts or
> omissions sufficiently harmful to evidence deliberate
> indifference to serious medical needs.

<u>Estelle</u>, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of

Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise

C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

The plaintiff has failed to show that he was denied medical treatment. In fact, plaintiff alleges in his complaint that an on duty nurse came to help immediately following his fall and then he was taken to the hospital for treatment by the doctors and was "shortly released." Plaintiff stated that he filed a grievance when he returned to JRLDC for a neck brace or wheelchair but was denied. Plaintiff has not put forth any evidence that these devices were prescribed by a doctor. Further, the evidence reveals that he was examined by the nurse at JRLDC when he complained of pain and his Motrin was continued but she deemed it unnecessary for him to return to the hospital.

Even if plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was denied medical treatment. Plaintiff has not put forth any allegation or evidence that he received anything other that de minimis injury.

13

As well, there is nothing in the plaintiff's complaint that alleges his health conditions were/ are life threatening conditions that warranted medical treatment. Unless medical needs are serious or life threatening, and the defendant was deliberately and irrationally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir.1986). Estelle requires that a medical problem be "serious" before the Constitution is implicated. Additionally, the plaintiff has not shown that any conduct by the defendants "shocks the conscious" as required by Miltier v. Beorn, supra. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel fails to state a claim unless exceptional circumstances are alleged . . . Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. Russell v.Sheffer, supra.

Clearly, there has been no deliberate indifference shown to the overall medical needs of the plaintiff. For the above stated reasons, summary judgment should be granted in favor of defendants on this issue and plaintiff's motion for summary judgment denied.

## H.  RISK OF HARM

The court recognized that punishment prohibited by the Constitution does not result from negligence on the part of prison officials.  The Supreme Court stated this principle and

14

established the appropriate standard in <u>Whitley v. Albers</u>, 475 U.S. 312 (1986).

> [t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all  must involve more than ordinary lack of due care for the prisoner's interest or safety
>
> . .. It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause. . . . <u>Id.</u>, at 1084.

Based on these precedents, the issue is whether an inmate who has suffered injury has alleged and offered evidence that the prison officials "wantonly and obdurately failed to take precautions for his safety in deliberate indifference to a specific known risk of harm. . . ." <u>Ruefly v. Landon</u>, 825 F.2d 792 (4th Cir. 1987).  The Supreme Court has defined "deliberate indifference" in the context of the liability of physical injury to an inmate.  In analyzing case law, the court concluded that deliberate indifference must be something more than mere negligence, but less purposeful or knowing conduct.  The court held: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).  The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  This approach comports best with the text of the Amendment as our cases have interpreted it.  The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."  An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation.  The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted].  But an official's failure

15

to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

The obduracy and wantonness standard applies to prison officials in supervisory positions as well as to guards and corrections officers who deal with inmates directly. Thus, a supervisor must know of a specific risk or be aware of a pervasive risk of harm and act "wantonly, obdurately, or with deliberate indifference to that specific or pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312 (4th Cir.), cert. denied, 502 U.S. 828 (1991).

This court concludes that the plaintiff has failed to prove that defendant Fox wantonly and obdurately failed to take precautions for his safety in deliberate indifference to a specific known risk of harm. Defendants admit that plaintiff sent letters prior to his fall to defendant Fox but argue that the condition of water on the floor in the shower area and the location in the unit on which plaintiff fell was not a condition that was ignored by the defendants. In their memorandum, defendants state that " Defendants do not contest that the plaintiff was sent letters prior to his fall to Director Fox. In fact, the Defendants contend it as "rather remarkable that the plaintiff's fall occurred less than two (2) weeks from the time that the letter was written to Director Fox and that the plaintiff, possessing great foresight in record keeping, had the wherewithal to keep the original envelope so that he could show in the future litigation that he had mailed the letter prior to the date of his eventual fall." (Memorandum p. 8).

Based on defendant Fox's affidavit, the area was cleaned on a daily basis and inmate workers were assigned to clean the area which plaintiff complained. Defendants assert that the water on the floor in most circumstances were caused by inmates throwing liquids and other

16

substances on the floor in the maximum security unit area. Thus, there were corrective measures in place and the situation was not being ignored. The plaintiff has offered no evidence to prove that defendant Fox knew of a "substantial risk of harm." Therefore, the undersigned recommends that this claim be dismissed and summary judgment granted in favor of the defendants.

## I. QUALIFIED IMMUNITY

In their motion for summary judgment, defendants assert that they are entitled to qualified immunity under the facts as presented in the plaintiff's complaint.

Although the burden of showing immunity remains on the defendants, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue. When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. The defendants argue that they are entitled to qualified immunity in their individual capacity.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

17

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S.

824 (1985).

In Torchinsky v. Siwinski, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit Court of

Appeals explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261. (Citations Omitted).

The Torchinsky court further noted that "a particularly appropriate procedure for

determining an official's entitlement to qualified immunity is summary judgment." The

Torchinsky court held that an official's entitlement to qualified immunity is based upon an

"objective reasonableness" standard. "The very idea of reasonableness requires that courts accord

interpretive latitude to officials judgments." Torchinsky, 942 F. 2d at 261, citing Sevigny v.

Dicksey, 846 F. 2d 953 (4th Cir.1988). Therefore, a plaintiff may prove that his rights have been

violated, but the official is still entitled to qualified immunity if a reasonable person in the

"official's position could have failed to appreciate that his conduct would violate" those rights.

Torchinsky, 942 F. 2d at 261, citing Collinson v. Gott, 895 F. 2d 994 (4th Cir. 1990). As the

Fourth Circuit explained in the case of Swanson v. Powers, 937 F. 2d 965 (4th Cir.1991), "[o]nly

violations of those federal rights clearly recognized in existing case law will support an award in

damages under 42 U.S.C. § 1983." 937 F. 2d at 967. Therefore, if a particular action by a state

agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there

is clearly established case law demonstrating that the alleged conduct is violative of the

Constitution.

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of

Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary
> functions are shielded from liability for money
> damages so long as their conduct does not violate
> clearly established statutory or constitutional rights
> of which a reasonable person would have known.
> Moreover, there are two levels at which the
> immunity shield operates. First, the particular right
> must be clearly established in the law. Second, the
> manner in which this right applies to the actions of
> the official must also be apparent. Officials are not
> liable for bad guesses in gray areas; they are liable for

transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. The undersigned cannot conclude that the defendant Fox in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra.  Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be granted on the basis of qualified immunity.

## II.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In his motion for summary judgment, plaintiff basically recites the allegations in his complaint. Based on the reasoning above, it is recommended that plaintiff's motion for summary judgment be deemed moot.

Further, any claims for injunctive relief that plaintiff is seeking with respect to his classification and/ or release from JRLDC should be denied as moot in that claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the condition complained of. Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983). Plaintiff has been transferred from JRLDC to Kirkland. (See document #25).

## III. CONCLUSION

The plaintiff has failed to show that defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  It is, therefore,

20

**RECOMMENDED** that the motion filed by the defendants for summary judgment (document #38) be **GRANTED IN ITS ENTIRETY** and that plaintiff's motion for summary judgment (document #30) be deemed **MOOT.**

s/ Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

August 11, 2005
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**